Carl F. SCHLIPF, et al., Appellants,

v.

EXXON CORPORATION, et al., Appellees.

No. B2693.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 22, 1981.

W. H. Betts, Hempstead, for appellant.

Frank Harmon, Kenneth P. Fountain, Michael Paul Graham, Michael Paul Graham, Baker & Botts, J. Lamar Hart, Houston, for Exxon Corp.

Dean J. Capp and Melvins Hawkins, Houston, for Amoco Production Co.

Stephen R. Kirklin, Kirklin, Boudreaux & Joseph, Tim S. Leonard, Kirklin, Boudreaux & Joseph, James R. Coffee, Dallas, for Atlantic Richfield Co.

James D. Klutz, Houston, for Conoco, Inc.

Cloy D. Monzingo, Houston, for Getty Oil Co.

Leo J. Hoffman, Strasburger & Price, Stuart C. Hollimon, Strasburger & Price, Julius L. Lybrand, Dallas, for Sun Oil Co.

James McCartney, D. Ferguson McNiel, Vinson & Elkins, Houston, for Mobil Oil Corp., Mobil G. C. Corp., Mobil Producing, Texas and New Mexico., Monsanto Co., Amerada Hess Corp., and Pennzoil Producing Co.

William H. Tenison, Andrews, Kurth, Campbell & Jones, Houston, for General Crude Co.

Before J. CURTISS BROWN, C. J., and MURPHY and SAM ROBERTSON, JJ.

MURPHY, Justice.

This is an appeal by all parties except Marathon Oil Company from the trial court's grant of appellants' motion for summary judgment. At issue is whether the trial court erred in setting aside a written contract and imposing a constructive trust upon funds held by Appellees, and whether its grant of Appellants' motion for summary judgment was a final, appealable order. We reverse and remand.

For clarity, all parties will be referred to as they were in the trial court. Plaintiffs in the trial court, Carl F. Schlipf (now deceased and represented by Melbert C. Schlipf as independent executor of the estate of Carl F. Schlipf), Melbert C. Schlipf, Carl Frederick Schlipf II, Patti Schlipf Baldridge, First National Bank of Brenham (trustee of the estate of Myrtle Alice Sears and Richmond State School), W. H. Betts, Sr. and W. H. Betts, Jr. own certain royalty interests in Waller County, Texas.

The original defendant in the trial court was Exxon Corporation, U.S.A., successor in interest to Humble Oil and Refining Company (Humble) and to a contract entered into between Humble and plaintiffs on December 7, 1968.

This contract provided for guaranteed fixed monthly royalty payments for thirty years (1969 to 1999). In addition the contract stipulated that plaintiffs were to be paid any sums in excess of the monthly payments at the end of the contract period. During the early 1970's royalty funds exceeded expectations because of the tremendous increase in the price of gas and production. Plaintiffs demanded payment of the excess royalty. Defendant, relying upon the 1968 contract, declined, which action became the basis of this suit.

Intervenors and third party defendants were Conoco, Inc., Amoco Production Company, Mobil Oil Corporation, Mobil Producing, Texas and New Mexico, Inc., Mobil G–C, Monsanto Company, Amerada Hess Corporation, Sun Oil Company (Delaware), Getty Oil Company, Pennzoil Producing Company, Marathon Oil Company and Atlantic Richfield Company. All are parties to a working interest contract with Humble dated May 23, 1969.

Plaintiffs' second amended petition sought: (1) recovery of the funds held by defendant on the theory of unjust enrichment and imposition of a constructive trust on those funds; (2) pre-judgment interest on those funds; (3) cancellation of the 1968 contract; (4) attorneys' fees; and (5) damages. Defendant answered by general denial. Defendant also filed cross-actions against the intervenors and third party actions against the remaining corporate non-operators seeking contribution based upon the respective proportionate share of each working interest under the contract of May 23, 1969.

According to the record before us, the trial court acted upon only one of plaintiffs' three separate motions to sever their causes of action, and ordered that all claims "involving a determination of market value of royalties due to and/or paid to plaintiffs ... be, and the same are hereby severed from all other causes of action herein asserted by plaintiffs...."

Plaintiffs limited their motion for summary judgment against defendant to the cause of action founded upon unjust enrichment and prejudgment interest on royalty funds held by defendant which exceeded

the amount of the fixed monthly payments. Defendant responded in writing to plaintiffs' motion for summary judgment and filed its own motion for summary judgment on its cross-actions and third party actions.

The trial court found no genuine issue of fact existed and granted plaintiffs' motion for summary judgment and found Defendants' "retaining such royalties would constitute unjust enrichment"; imposed a constructive trust upon the royalties; ordered defendant to pay such funds to plaintiffs; and ordered the 1968 contract terminated.

The court further stated:

"The relief herein granted Plaintiffs, respectively, and collectively, is in satisfaction of all their claim's and causes of action asserted in their Second Amended Petition herein and all claims and/or causes of action herein asserted by all parties herein and not herein granted are hereby in all things denied and concluded."

Finally, the trial court granted defendant's motion for summary judgment against the third party defendants and intervenors.

Sun Oil Company (Delaware), intervenor and cross-defendant, has filed a motion to dismiss all appeals for want of jurisdiction contending that the judgment does not dispose of all issues and all parties involved in the case, and therefore, constitutes an interlocutory unappealable order.

 This court has jurisdiction over an appeal only if the trial court judgment is final, i.e., it disposes of all issues and parties in a case. *North East Independent School District v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966). We have examined the trial court's judgment and find several indicia of a final judgment, including the style of the document, a provision for execution and enforcement and the express language quoted above, although seldom used in summary judgment motions, which purports to dispose of all parties and issues. The general rule is where a trial court renders a judgment in a case set for a trial on the merits it is presumed the court intended to

dispose of all parties before it and all issues raised by the pleadings, *Id*, at 898. Under this rule, it is not necessary that the judgment language expressly dispose of all parties and issues. *Id*, at 897; *Vance v. Wilson*, 382 S.W.2d 107, 109 (Tex.1964); *Windmill Dinner Theatre of Dallas v. Hagler*, 582 S.W.2d 585, 587 (Tex.Civ.App.—Dallas 1979, writ dism'd). Claims raised by pleadings not expressly disposed of by a judgment are denied by implication. *Id; Rackley v. Fowlkes*, 89 Tex. 613, 36 S.W. 77, 78 (1896). Plaintiffs' motion for summary judgment specifically asks for recovery of royalties held by defendant under the 1968 contract and pre-judgment interest on those royalties. The judgment entered by the trial court is silent as to plaintiffs' request for pre-judgment interest and, therefore, under the rule stated in all the above authorities, plaintiffs' request for pre-judgment interest was impliedly denied. The above-cited authorities do not distinguish between judgments entered after a trial on the merits and judgments entered granting a summary judgment before a trial on the merits is held, nor do we see any reason for such a distinction. *Pan American Petroleum Corporation v. Texas Pacific Coal and Oil Company*, 159 Tex. 550, 324 S.W.2d 200 (1959) is distinguishable in that the trial court there neither expressly nor by implication disposed of all issues and parties before it. In that case the trial court had entered a summary judgment against certain defendants. No severance was ordered as to that phase of the case. The Texas Supreme Court held that a summary judgment which does not dispose of all parties and issues is unappealable absent a severance of the phase of the case disposed of by that summary judgment. In other words, the granting of a summary judgment against one of several defendants does not act as a severance of that part of the lawsuit. Such a summary judgment which leaves rights and claims of a portion of the parties untried cannot be viewed as a final judgment. The situation presented in *Pan American* does not exist in the case before us. The judgment here expressly disposes of all parties, issues, and claims. Because no rights or claims of any

party remain untried, no severance of a portion of the lawsuit to create a final judgment was necessary. We hold, therefore, that the trial court's order of summary judgment for plaintiffs, having disposed of all parties and issues, is a final appealable order.

The second question we must address is did the trial court err as a matter of law in setting aside the 1968 contract under the theory of unjust enrichment and imposing a constructive trust on funds held by defendant pursuant to that contract. Texas contract law clearly requires a claimant under an equitable theory to show that the other party has received a benefit at the claimant's expense before a written contract will be set aside. *Walton v. Steffans*, 170 S.W.2d 534, 536 (Tex.Civ.App.—El Paso 1942, writ dism'd w. o. m.). A court will view an unambiguous written contract as reflecting the parties' intent. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). Moreover, Plaintiffs submitted no summary judgment proof necessary for intervention of the trial court's equity powers, e.g., mutual mistake, fraud, illegality, or other misconduct. *Peirce v. Sheldon Petroleum Company*, 589 S.W.2d 849, 852 (Tex.Civ.App.1979, no writ); 17 C.J.S. *Contracts* § 6 (1963). The record indicates the 1968 contract is clear, concise and plaintiffs have received exactly that for which they contracted.[1] In a situation such as that before us, the authorities unanimously uphold and enforce the contract as an expression of the parties' intent. *Id; Exxon Corporation v. Eastman Kodak Company*, 589 S.W.2d 473, 478 (Tex.Civ. App.—Texarkana), *rev'd on other grounds*, 603 S.W.2d 208 (Tex.1979); *First National Bank in Dallas v. E. R. Kinabrew*, 589 S.W.2d 137, 148 (Tex.Civ.App.—Tyler 1979, writ ref'd n. r. e.). Plaintiffs may not escape their contract due to the mere fact that events subsequent to its execution make benefits they demanded and negotiated for less beneficial than they had hoped.

*City of Austin v. W. C. Cotten*, 509 S.W.2d 554, 557–558 (Tex.1974).

We hold, therefore, that the trial court erred as a matter of law in setting aside the 1968 contract and imposing a constructive trust upon funds held by defendant pursuant to the terms of that contract and reverse the judgment granted to plaintiffs. On the facts before us, we would render judgment for defendant had defendant filed a motion for summary judgment. Absent such a predicate, the only alternative for this court is to remand for further proceedings. Because the judgment for plaintiffs necessitated the trial court's granting of defendant's motion for summary judgment against the corporate non-operators as third party defendants pursuant to their 1969 contract, a reversal of the judgment for plaintiffs' requires us to reverse that judgment for defendant.

Reversed and remanded.

## EXHIBIT B

## THE STATE OF TEXAS

## COUNTY OF WALLER

KNOW ALL MEN BY THESE PRESENTS:

1. Whereas Humble Oil & Refining Company, et al, have heretofore executed a Unit Agreement under the terms of which the Katy Gas Field Consolidated Unit is created, hereinafter referred to as "Consolidated Unit", a counterpart of which Unit Agreement is of record in Volume 203, pages 638 et seq., of the Deed Records of Waller County, Texas, such Agreement being hereinafter referred to as "Consolidated Unit Agreement", said Consolidated Unit Agreement and Exhibits attached thereto being here referred to for a description of the terms thereof, the owners of the working interests and royalty interests affected thereby and for all other purposes; and

---

1. To illustrate the clarity of the contract between plaintiffs and defendant, and to forestall any feeling that unjustness exists due to the nature of the parties and the amount of money at stake, despite the absence of unjust enrichment grounds, we attach a copy of the 1968 contract as an exhibit.

2. Whereas Carl F. Schlipf, Melbert C. Schlipf, individually and as Trustee of the Freddie Schlipf Trust and the Patti Schlipf Trust, John Henry Wright, Roberta Wright Rylander, Harry Weinman, individually and as Guardian of the Estate of Karl Weinman, Erwin T. V. Weinman, Walter J. Weinman, Norman L. Sumner, as Administrator of the Estate of Myra M. Sumner, Pauline D. Wright, Myrtle Alice Sears, and W. H. Betts as Trustee of the Henry Luke Sears Trust are plaintiffs in a case styled *CARL F. SCHLIPF, ET AL VS. AMERADA PETROLEUM CORPORATION, ET AL*, No. 6064, in the District Court of Waller County, Texas, against Amerada Petroleum Corporation and other working interest owners; and

3. Whereas all of such named plaintiffs in Cause No. 6064, in the District Court of Waller County, Texas, except Pauline D. Wright, Myrtle Alice Sears and W. H. Betts as Trustee of the Henry Luke Sears Trust are plaintiffs in the case styled *CARL F. SCHLIPF ET AL VS. RAILROAD COMMISSION OF TEXAS*, No. *163,753*, in the District Court of Travis County, Texas, 53rd Judicial District, and in the case styled *HARRY WEINMAN ET AL VS. RAILROAD COMMISSION OF TEXAS*, No. 165,586, in the same court in Travis County, Texas, such two Travis County cases having been consolidated under Cause No. 163,753, and Humble Oil & Refining Company, Sun Oil Company, Pan American Petroleum Corporation, Sunray DX Oil Company, Mobil Oil Corporation, Atlantic Richfield Company, and General Crude Oil Company have intervened in such Travis County litigation and aligned themselves with the Railroad Commission of Texas in support of the order there attacked, reference being here made to the pleadings filed in each of said cases for a more particular description of the nature of each of said suits, of the interests affected thereby, and for all other purposes; and

4. Whereas all of the above named plaintiffs in each of the suits above described are hereinafter sometimes referred to as "plaintiffs"; and

5. Whereas said suits are to be dismissed with prejudice as to all causes of action asserted by plaintiffs in their Original Petition and/or First Amended Original Petition in said Cause No. 6064 and/or Cause No. 163,753 as to plaintiffs named in said causes and in the respective capacities in which they appear and are parties to said causes in favor of all defendants named therein coincident with the delivery of this document duly executed, acknowledged and delivered by the undersigned operator of Katy Gas Field Consolidated Unit, and plaintiffs separately have agreed to execute the Consolidated Unit Agreement or a ratification thereof, and are, coincident with the delivery of this document, delivering to Humble Oil & Refining Company counterparts or ratifications of such Consolidated Unit Agreement properly executed and acknowledged;

6. Now, therefore, in consideration of the mutual benefits to the parties hereto, Humble Oil & Refining Company, hereinafter sometimes called "Humble" does hereby guarantee unto and obligates itself and promises to pay to each and all of the aforesaid plaintiffs respectively, in lieu of the royalty proceeds of their respective interests so unitized under said Consolidated Unit Agreement accruing during such 30-year period, a Guaranteed Royalty Payment of $9,350 per royalty acre, payable at the rate of $25.9722 per month per royalty acre each month during a 30-year period beginning January 1, 1969, and to make such monthly payments to said plaintiffs, to wit:

Carl F. Schlipf

Melbert C. Schlipf

Melbert C. Schlipf, as Trustee of the Freddie Schlipf Trust

Melbert C. Schlipf, as Trustee of the Patti Schlipf Trust

John Henry Wright

Roberta Wright Rylander

Harry Weinman

Harry Weinman, as Guardian of the Estate of Karl Weinman

Erwin T. V. Weinman

Walter J. Weinman

Norman L. Sumner, as Administrator of the Estate of Myra M. Sumner

Pauline D. Wright

Myrtle Alice Sears

W. H. Betts, as Trustee of the Henry Luke Sears Trust

in the amounts respectively as represent $25.9722 per royalty acre owned on November 12, 1968 by said plaintiffs named in this paragraph. In addition, Humble, at the end of such 30–year period, will pay plaintiffs, respectively, in a lump sum an amount equal to the royalty which would otherwise accrue under the Consolidated Unit Agreement during such thirty years to the then owner of each such royalty acre so unitized in such Consolidated Unit in excess, if any, of the guaranteed sum of $9,350 per royalty acre. The first of said monthly Guaranteed Royalty Payments shall be for the month of January 1969, and shall be made on or before February 25, 1969, and successive payments—shall be made monthly thereafter.

7. All sums guaranteed to be paid hereunder including the lump sum, if any, mentioned above, shall be inclusive of all production, severance and other taxes now or hereafter in effect, which Humble is, or may hereafter be, required by law to pay direct to the taxing authority. Payments so made direct to the taxing authority shall be deducted from the Guaranteed Payments to be made to royalty owners. However, Humble shall furnish the royalty owners a statement showing the nature and amount of such taxes annually or more often.

8. Should there be a lump sum payment in excess of the guaranteed $9,350 per acre, it shall be due and payable to the then owner of each and all of said royalty acres without interest at the end of such thirty-year period or within six months after January 1, 1999, to the then owner or owners of each and all such royalty acres, respectively, but if not paid within such time, such sums shall bear interest at the rate of ten percent per annum from January 1, 1999. This agreement applies to each royalty acre, or part thereof owned by each of the plaintiffs in the 11,285.35 acres known as the Katy Gas Field Unit I which is unitized as Tract 1 of the Consolidated Unit.

9. In this document a Guaranteed Royalty Payment per royalty acre means $9,350 for one-eighth (⅛) royalty interest in one (1) acre of land in Tract 1 of the Consolidated Unit. If the royalty interest of any plaintiff is more or less than one-eighth (⅛) in one (1) acre of land in said Tract 1, then said Guaranteed Royalty Payment of $9,350 per royalty acre shall be increased or decreased accordingly.

10. Humble's obligation to continue the respective monthly Guaranteed Royalty Payments as aforesaid continues to the end of the thirty-year period even if production of unitized substances (as that term is defined in the Consolidated Unit Agreement) from the Consolidated Unit terminates prior to that time. On the other hand, if such Unitized Substances are still being produced from any of the lands committed to and covered by the Consolidated Unit after the end of said thirty-year period, plaintiffs shall share in such production under the terms and provisions of the Consolidated Unit Agreement unaffected by this document and the payments to be made hereunder.

11. The 360 monthly Guaranteed Royalty Payments to be made during such thirty years shall be paid in lieu of what would otherwise have been the royalty payments accruing to the plaintiffs' royalty interests under the terms of the Consolidated Unit Agreement, but this does not diminish the rights above set forth to receive a lump sum payment at the end of the thirty years, if any accrues, under the terms hereof. The monthly Guaranteed Royalty Payments to be made during the thirty years shall be considered to be royalty on production from the Consolidated Unit for all purposes, including lease and unit (including Katy Gas Field Unit I and Katy Gas Field Consolidated Unit) maintenance.

12. Humble shall be entitled to receive all proceeds accruing under the terms of the Consolidated Unit Agreement to the royalty so unitized by plaintiffs during the thirty years. In whole, or to the extent they prove sufficient, Humble shall use such proceeds either to make the payments to plain-

tiffs required by the terms of this instrument or to reimburse itself therefor. If such accrued royalties cumulatively exceed $9,350 per royalty acre, such excess shall be paid by Humble to the then owners of said royalties, respectively, in a lump sum as hereinbefore provided.

13. All royalty payments shall be payable to plaintiffs in accordance with their respective interests, as same may *appear* from the records of Humble, on the date such payments become due, without regard to any changes in interest during the period for which such payments may be made.

14. The payment or tender of the monthly Guaranteed Royalty Payment under the terms hereof may be made by the check or draft of Humble mailed or delivered on or before the date when such payment is due to each plaintiff entitled thereto at the post office address of each such plaintiff last known to Humble. No change or division in the ownership of the plaintiffs shall be binding on Humble until thirty days after Humble shall have been furnished by registered mail at Humble's principal place of business with a certified copy of recorded instrument or instruments evidencing same.

15. The obligation of Humble Oil & Refining Company to make the payments to plaintiffs as provided in this document shall be absolute and unconditional; provided, however, delay in the making of any payment shall not cause a forfeiture of any rights under this document or the Consolidated Unit Agreement and any leases or pooling agreements affected thereby, but late payments not made within 30 days of its due date shall bear interest at ten percent per annum, and, after 30 days' written demand for payment, if suit for collection of any payment is filed three months or more after any payment is due and judgment is recovered for any payment by the owner thereof, Humble obligates itself to pay such owner a reasonable attorney's fee for legal services in said suit.

16. Plaintiffs agree that they are executing this document with reliance only on their own attorneys, engineers, and their own judgment and without any reliance whatsoever upon any representations, express or implied, from Humble or any other party to the aforesaid suits.

17. This document shall inure to the benefit of each of the royalty owners aforesaid, their heirs, assigns, successors, devisees and representatives, separately, and respectively, and shall be binding upon each of the respective parties hereto, their heirs, assigns, successors, devisees and representatives.

18. This instrument may be executed in one document, signed by all parties, or in separate documents, which shall be counterparts hereof. If executed in separate counterparts, all such counterparts, when executed by one or more of the parties, shall constitute but one and the same instrument. This contract is a severable contract as between Humble and the above said plaintiffs, respectively. The failure of any one or more of the plaintiffs to sign this instrument or any counterpart thereof shall not in any manner affect the validity and binding effect of same as to those plaintiffs who executed same. This instrument shall not become binding on any of the parties hereto until Humble has executed and delivered this instrument or a counterpart hereof.

Executed on the date evidenced by the certificate of acknowledgment hereof of the parties hereto.

APPROVED:

/s/ Walter B. Morgan
—————————————————
Attorney for Humble Oil & Refining Company

/s/ Elmer F. Patman
—————————————————
Elmer F. Patman, Attorney for Plaintiffs in Travis County litigation

HUMBLE OIL & REFINING COMPANY

By /s/ J. H. Galloway
—————————————————
J. H. Galloway
Vice President and Director

/s/ Carl F. Schlipf
—————————————————
Carl F. Schlipf

/s/ W. H. Betts
_____
W. H. Betts, Attorney for Plaintiffs

_____
/s/ Norman L. Sumner, Administrator of
the Estate of Myra M. Sumner

_____
/s/ Ira M. Sumner

/s/ Melbert C. Schlipf
_____
Melbert C. Schlipf, Individually and as
Trustee of the Freddie Schlipf Trust and
the Patti Schlipf Trust

/s/ Harry Weinman
_____
Harry Weinman, Individually and as Guardian of the Estate of Karl Weinman

/s/ Pauline D. Wright
_____
Pauline D. Wright

/s/ W. H. Betts
_____
W. H. Betts, Trustee of the Henry Luke
Sears Trust

/s/ Myrtle Alice Sears
_____
Myrtle Alice Sears

/s/ Zelma Schlipf
_____
Zelma Schlipf

/s/ John Henry Wright
_____
John Henry Wright

/s/ Roberta Wright Rylander
_____
Roberta Wright Rylander

/s/ Erwin T. V. Weinman
_____
Erwin T. V. Weinman

/s/ Walter J. Weinman
_____
Walter J. Weinman

_____

SAM ROBERTSON, Justice, dissenting.

Believing that a jurisdictional question prevents us from considering this case on its merits, I respectfully dissent.

Sun Oil Company (Delaware), intervenor and cross-defendant in the trial court, has moved to dismiss all of the appeals herein for lack of jurisdiction, urging that the district court's judgment fails to dispose of the plaintiff's claim for pre-judgment interest. Sun contends this failure to dispose of all of the issues renders the judgment a nonappealable, interlocutory decree.

It is clear "an appeal may be prosecuted only from a final judgment and ... to be final a judgment must dispose of all issues and parties in a case." *North East Independent School District v. Aldridge*, 400 S.W.2d 893 (Tex.1966). A summary judgment which does not do so is interlocutory and not appealable unless a severance is ordered by the trial court. *Pan American Petroleum Corporation v. Texas Pacific Coal & Oil Company*, 159 Tex. 550, 324 S.W.2d 200 (1959).

The applicable portion of Tex.R.Civ.P. 166–A(c), concerning "Motion and Proceedings Thereon", clearly provides:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and *the moving party* is entitled to judgment as a matter of law on the issues as expressly set out in the motion or in an answer or any other response. (Emphasis added)

Plaintiffs' claim for pre-judgment interest was not severed, nor was it specifically granted by the court. However, the judgment, in "denying and concluding all claims not granted," at least by implication, denied plaintiffs' motion for summary judgment in that respect.

By this action, the court did not pass upon the merits of plaintiffs' pre-judgment interest claim. The judgment was rendered

in response to a motion for summary judgment asserted *only* by plaintiffs and, therefore, it may be construed only as a refusal of the court to adjudicate that aspect of plaintiffs' claim as a matter of law. *Wright v. Wright*, 154 Tex. 138, 274 S.W.2d 670 (1955).

Permitting an appeal from the denial of a motion for summary judgment might, under some circumstances, be advantageous in speeding up the resolution of litigation. However, in my opinion, this is not permissible under the facts of this case. As I view it, the order under review is interlocutory and is not an appealable order within the power and jurisdiction of this court to review. *Hall v. City of Austin*, 450 S.W.2d 836 (Tex.1970). I would dismiss the appeal for want of jurisdiction and without prejudice to the rights of any party.